HENDRICK HUDSON APARTMENTS, INC., Appellant, *v.* JOHN H. TENNANT, Respondent.

HENDRICK HUDSON APARTMENTS, INC., Appellant, *v.* FLORENCE ALTMAYER, Respondent.

HENDRICK HUDSON APARTMENTS, INC., Appellant, *v.* ELIZABETH A. FOLLETT, Respondent.

HENDRICK HUDSON APARTMENTS, INC., Appellant, *v.* HARRY L. TOPLITT, Respondent.

HENDRICK HUDSON APARTMENTS, INC., Appellant, *v.* GEORGE W. ALGER, Respondent.

HENDRICK HUDSON APARTMENTS, INC., Appellant, *v.* HATTIE BUNZEL, Respondent.

HENDRICK HUDSON APARTMENTS, INC., Appellant, *v.* JOHN A. WILLIAMS, Respondent.

First Department, December 22, 1922.

Landlord and tenant — Emergency Rent Laws — action for rent — defense that rent demanded was unjust, unreasonable and oppressive — reasonable rental of apartment improperly fixed by court where total rental of building on basis of highest rental fixed for any apartment is less than reasonable rental of entire house.

The reasonable rental of apartments in an apartment house is improperly fixed by the court in an action for rent, in which the defense interposed is that the rent demanded is unjust, unreasonable and oppressive, where the total rental of the entire house on the basis of the highest rental fixed for any apartment is less than the reasonable rental of the entire house as fixed by the court.

DOWLING and GREENBAUM, JJ., dissent.

APPEAL by the plaintiff in each of the above-entitled actions for rent from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 27th day of June, 1922, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Seventh District, in each action, determining the reasonable rental of the apartments in plaintiff's property occupied by the respective defendants. In each action the defendant alleged under the Emergency Rent Laws (Laws of 1920, chap. 136, as amd.) that the amount claimed was unjust, unreasonable and oppressive.

The appeals were consolidated by consent.

*Stotesbury & Miner* [*Louis W. Stotesbury* of counsel], for the appellant.

*Jacob Walz*, for the respondents Follett and others.

*Alger & Coughlan*, for the respondent Alger.

*Cohen, Cole & Weiss*, for the respondent Williams.

*Max J. Bernheim*, for the respondent Bunzel.

*William F. Kimber*, for the respondent Toplitt.

FINCH, J.:

The building in question is a modern, eight-story, fireproof, steel-constructed apartment house, occupying the block front on Riverside Drive between One Hundred and Tenth and One Hundred and Eleventh streets in New York city. The plaintiff is a corporation whose stockholders comprise the tenants of the property, and which purchased the property for $1,210,000 on August 1, 1920, paying $253,200 cash and the balance on first and second mortgages. For the purpose of determining the reasonable rental value of the respective apartments, the building was divided by the court into nine certain sections or tiers, more or less favorably situated as to light, outlook, exposure, etc., and the total reasonable gross rental (called by the trial court " annual carrying charge ") of the building apportioned among said nine sections in a percentage correlative to the relative value of the respective sections according to the above-mentioned factors, as found by the court. As a logical sequence, the rental value of each apartment in a particular tier or section of the building should be such a proportionate part of the total gross rental apportioned to that section, that the sum of the percentages allotted to the respective apartments would equal 100 per cent of such gross rental, or, in other words, the sum of the rental values of the individual apartments in each section should equal the gross rental for that section. The trial court, however, in proceeding to fix the rental value of the individual apartments in question, apparently has not applied this principle of apportionment, but after considering certain particular features of the respective apartments, has fixed their rental values at amounts which, taking even the highest rental awarded, for an apartment which the trial justice characterized as being in the most desirable group in the house, and applying that rate throughout the particular section and even throughout the entire house, falls considerably short of the total gross rental of the house. In other words, the trial court found " the total annual carrying charge of these premises is $177,292 * * * each tenant is called upon to bear his fair share of this." The court likewise found that " the operating expenses are therefore placed at $47,037.63. The depreciation * * * is $6,400. The city taxes amount to $31,855." The

operating expenses and taxes, as found by the court, added to the interest on the first and second mortgages, make a total of $128,557.53, which is exclusive of any return of the cash put into the property by the stockholders of the plaintiff, which amount, as noted, was the sum of $253,200. In computing the amount of the total reasonable gross rental of $177,292, it would seem that the learned court was inadvertently led into error, for even one per cent of the assessed valuation amounted to $6,900, and not $6,400, since the assessed valuation of the building was $690,000. In addition, the value of the property, as found, would seem to be low. Passing this, however, and assuming for the purposes of the result reached upon this appeal, that the total reasonable gross rental of these premises is $177,292, it appears that the rentals found are clearly against the weight of the evidence. The average of the judgment rate if applied throughout the house amounts only to $128,092.57, which, as seen, is not sufficient to pay the bare carrying charges, not including one penny of return to the owners upon their cash investment of $253,200. If, however, it is urged that the rental of some of the apartments was fixed at a low rate on account of certain unfavorable conditions peculiar to them, the answer to this is that even applying the rate found by the court of " the most desirable group in the house by reason of southern and western exposures on both Cathedral Parkway and the best portion of Riverside Drive," the rental would still fall short by $8,229.50 of what the learned trial justice has found to be the total reasonable rental which the house should produce. When in addition to this, it is considered that out of the 541 rooms in all the house, there are only 63 rooms in the section denominated by the court as " the most desirable group in the house," it is not necessary to go further to show that a new trial should be ordered.

It follows that the determination appealed from and the judgments of the Municipal Court should be reversed and a new trial granted, with costs to appellant in all courts to abide the event.

CLARKE, P. J. and MERRELL, J., concur; DOWLING and GREEN-BAUM, JJ., dissent.

Determination appealed from and judgment of the Municipal Court reversed and new trials ordered, with costs in the Municipal Court, costs as of one appeal in the Appellate Term and costs as of one appeal in this court to the appellant to abide the event.